FILED
2022 Sep-06  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **CHRISTAL LYNN WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:21-cv-00835-LCB** |
| | ) | |
| **KILOLO KIJAKAZI[1],** | ) | |
| ***Acting Commissioner of*** | ) | |
| ***Social Security,*** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Christal Lynn Williams appeals the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). (Doc. 9 at 29). She argues the Commissioner committed reversible error by failing to: (1) follow the district court's remand order; (2) properly evaluate opinion evidence; and (3) properly consider whether she met or equaled Listing 12.06 for anxiety. (Doc. 9 at 1). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Court hereby substitutes Kilolo Kijakazi for Andrew Saul as Defendant per Rule 25(d) of the Federal Rules of Civil Procedure. When a public officer leaves office, that "officer's successor is automatically substituted as a party." *See* Fed. R. Civ. P. 25(d).

## I.      Background

Williams filed Title II and Title XVI applications in 2011. (Doc. 9 at 1). She requested a hearing before an ALJ after her initial applications were denied. (Doc. 12 at 2). The hearing was held on May 14, 2013, and the ALJ denied her claims on June 21, 2013. (Doc. 9 at 2). Williams timely requested a review of the ALJ's findings by the Appeals Council ("AC"). *Id.* Upon reviewing the case, the AC vacated and remanded the case to a second ALJ for further proceedings. (Tr. at 161-63). In its order, the AC directed the second ALJ to further evaluate Williams's mental impairments  "with the special technique described in 20 CFR 404.1520a," provide additional consideration to her RFC as a whole and obtain clarification from a VE on Williams's assessed limitations. *Id.*

A second ALJ heard the case on June 19, 2017, and entered another unfavorable decision on October 3, 2017. (Doc. 9 at 2). The AC denied Williams's second review request, finalizing the second ALJ's determination. *Id.* Williams then timely appealed to the district court. *Id.* On February 13, 2020, United States Magistrate Judge Gray M. Borden reversed and remanded the second determination for the "purpose of issuing a new disability determination consistent with [the]

opinion." *Williams v. Saul,* No. 5:18-cv-01464-GMB, 2020 WL 733815, at *14 (N.D. Ala. Feb. 13, 2020)("*Williams I*").[2]

The AC provided the court's remand instructions to another ALJ on June 25, 2020. (Doc. 9 at 2-3). At the hearing on remand, Williams offered additional medical evidence, and the ALJ also heard testimony from a vocational expert ("VE"). On March 24, 2021, the ALJ entered a third unfavorable decision, and the AC denied review. This case followed.

## II. The ALJ's Analysis

After the latest hearing, the ALJ issued a written opinion explaining his decision. (Tr. 1334-81). In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If

---

[2] Judge Borden's opinion is contained in the record at (Tr. at 1439-74).

a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops.  Otherwise, the ALJ will proceed to step two.  In the present case, the ALJ found that Williams had not engaged in substantial gainful activity since September 1, 2010.  (Tr. at 1337).  Accordingly, the ALJ moved on to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR 416.920(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…."  *Id*.  If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends.  Here, the ALJ found that Williams had the following severe impairments: obesity, affective mood disorders, anxiety, carpal tunnel syndrome, degenerative changes of the medial and patellofemoral compartments of the left knee, and right knee mild arthritic changes.  *Id.* at 1338.

The third step of the analysis requires the ALJ to determine whether the claimant's impairments or a combination thereof meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I.  If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends.  If not, the ALJ proceeds to the next step.  In this

case, the ALJ found that Williams's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (Tr. at 1342).

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Williams's case, the ALJ found that she did not have the RFC to perform her past work as a collector and customer service representative. (Tr. at 1379). Therefore, he proceeded to the final step in the evaluation process.

At the final step, the ALJ must consider whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant can do other work, she is not disabled; if not, she is disabled. According to the ALJ, Williams had the RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain physical and mental limitations as follows. (Tr. at 1353). After hearing testimony from a VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Williams would be able to perform given her RFC, age, education, and work experience. Specifically, the ALJ opined that Williams could perform the work of

a routing clerk, marker, inspector, or hand packager. (Tr. 1381). The ALJ also found that these jobs existed in sufficient numbers in the national economy to provide Williams employment opportunities. Therefore, the ALJ concluded Williams was not disabled as defined by the Social Security Administration.

### III.   Legal Standard

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### IV.   Williams's Arguments

Williams claims the Commissioner's decision to deny her benefits was faulty for three reasons. She first argues the Commissioner failed to follow Judge Borden's remand order when it allowed for a third administrative hearing as opposed to immediately awarding benefits. (Doc. 9 at 1). Next, she claims the ALJ, upon remand, improperly evaluated the record medical opinion evidence. *Id.* Finally, Williams claims she met or medically equaled Listing 12.00 in the Listing of Impairments, and that the ALJ's finding to the contrary was not supported by substantial evidence. *Id.* The Court considers each argument in turn.

### A. The ALJ followed Judge Borden's instructions on remand.

Williams argues that the ALJ was bound to find in her favor on remand per the "mandate rule."[3] (Doc. 9 at 18). Specifically, she claims the ALJ was bound to award benefits in accordance with Judge Borden's mandate, and the ALJ acted outside the scope of his role by revisiting issues and calling for additional testimony. *Id.* The error in this argument, however, is that Judge Borden did not mandate the

---

[3] The "mandate rule" is a specific application of the "law of the case" doctrine requiring that a trial court, upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate. *Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010).

ALJ find in Williams's favor upon remand by automatically awarding benefits. *Williams I*, 2020 WL 733815, at \*14.

The Social Security Act governing judicial review allows the district court to remand a case to the Commissioner to consider previously unavailable or additional evidence. *Ingram v. Commr. of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). Should the AC decide, it may delegate the remand to the ALJ and empower them with the same duties and restrictions as provided by the Court upon remand. *Id*. The remand does not grant a lower court the ability to re-decide an issue previously decided by a higher court. *Id*.

Although a district court has the power to remand a case with instructions to award benefits, that is not what happened here. When ruling "the Commissioner's decision [was] not based upon the proper legal standards and substantial evidence," the court opened the claim up for reevaluation by the ALJ. The court correctly noted that it is within the ALJ's role to discredit medical opinions. However, the court found that error arose when the ALJ assigned little weight to a particular healthcare provider's opinion overall while simultaneously relying heavily on that same provider's opinions in making his determination. *Williams I*, 2020 WL 733815 at \*14. The decision was therefore reversed and remanded "for the purpose of issuing a new disability determination consistent with [the court's] opinion." *Id*. Nowhere

in the court's remand language was there a mandate to automatically issue a decision in favor of Williams. Rather, it reversed the ALJ's determination to allow it to come to a more informed decision consistent with the opinion. *Id*. It is by this remand the ALJ was able to reevaluate and issue a new decision, not automatically award benefits. *Id*. Accordingly, Williams is due no relief on this issue.

**B. The ALJ properly evaluated the medical opinion evidence.**

Williams next argues that the ALJ committed reversible error by failing to properly evaluate the opinion evidence as to her psychological and physical impairments. According to Williams, the ALJ again cherry-picked evidence and pieces of opinion statements to support his finding that Ms. Williams is capable of performing light work. (Doc. 9 at 21). This type of "cherry picking" was decried by the magistrate judge in his opinion reversing the prior ALJ's decision. However, this Court disagrees with Williams's characterization of the present opinion and finds that the ALJ properly considered and weighed all the available evidence, including opinion evidence. Further, the Court finds that the ALJ's determination is supported by substantial evidence.

In determining the weight afforded to medical opinions, an ALJ is to consider a number of factors including specialty of the providers, length of the treatment relationship, and the consistency of the opinion with the record as a whole. 20 C.F.R.

416.927(c).  After considering these factors the ALJ is to "give good reasons" in the decision for the weight given. 20 C.F.R. 416.927(c)(2).  Williams contends that "the ALJ did not consider these factors and did not provide good reasons for rejecting the available expert opinion evidence in favor of [his] own analysis."  (Doc. 9 at 21). The Court will address the ALJ's consideration of Williams's alleged psychological limitations followed by his consideration of her alleged physical limitations.

### 1. Psychological Limitations

In support of her application for disability, Williams introduced medical evidence of her psychological limitations in the form of opinions from various healthcare providers, including Dr. Robert Estock, Dr. Jon Rogers, Anna Hines-Capron, CRNP, and Marina Nedospasova, CRNP.  According to Williams, each of these providers found functional limitations greater than those in the ALJ's RFC.

For example, Williams states that Dr. Estock opined she "would benefit from a flexible schedule, casual nonconfrontational supervision, casual interaction with the public, and would be expected to miss 1-2 days per month." *Id*.  Williams asserts that the VE testified that missing one to two days per month would be work preclusive.  Therefore, she says, the ALJ should have found that her conditions would prevent her from obtaining and maintaining employment.  However, the ALJ found that terms such as "would benefit," "would be expected," and "flexible" are vague, undefined, and lacking in vocational application.  (Tr. at 1367-68).  For

example, the ALJ noted that, although Dr. Estock said Williams would benefit from a flexible schedule, he did not define "flexible," nor did he explicitly opine that Williams's limitations precluded her from working. Similarly, the ALJ found Dr. Estock's opinion that Williams "would be expected" to miss one to two days of work per month is conclusory and speculative, i.e., not a definite limitation. The ALJ found that opinion to be an "unquantifiable measurement" that did not adequately define Williams's work-related mental abilities. (Tr. at 1367). For those reasons, the ALJ gave these opinions no weight.

An ALJ may discount an opinion when the opinion is conclusory, the provider fails to provide objective medical evidence to support his or her opinion, or the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Courts in this Circuit have found that ALJs properly discounted similarly inconclusive findings set forth in medical opinions. *See, e.g.*, *Francis v. Astrue*, No. 3:10–cv–1030–J–34JBT, 2011 WL 7111553, at *11 (M.D. Fla. Nov. 16, 2011)(explaining a doctor's opinion that a claimant "may" have a certain limitation only suggested "possibilities" and was "inconclusive"); *Thompson v. Comm'r of Soc. Sec.*, No 2:15-cv-53-FtM-CM, 2016 WL 1008444, at *9 (M.D. Fla. Mar. 15, 2016)(noting "psychologists opined that timed work 'may' be too stressful, but did not preclude it"); *Williams v. Comm'r of Soc. Sec.*, No: 6:18-cv-350-Orl-40GJK,

2019 WL 957885, at *7 (M.D. Fla. Feb. 12, 2019)(finding a failure to evaluate an opinion was harmless because a statement that claimant "may" struggle meeting demands from a cognitive standpoint was equivocal) (citing *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011)). When an opinion is conclusory, the provider fails to provide objective medical evidence to support his or her opinion, or the opinion is inconsistent with the record as a whole, an ALJ may discount the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60. Accordingly, Williams's assertion that the ALJ's findings in this regard constitute reversible error is without merit. The ALJ provided an adequate explanation for assigning little weight to those portions of Dr. Estock's opinion and, therefore, did not commit reversible error.

Williams also argues that the ALJ improperly rejected the opinions of Ms. Hines-Capron and Ms. Nedospasova without explanation. Each of those providers opined that Williams had "marked" limitations in her activities of daily living, and in maintaining concentration, persistence, and pace. These opinions were given in the form of checkmarks on pre-printed, fill-in-the-blank forms that did not specifically reference any other records supporting those conclusions. *See* (Tr. 1226). Williams asserts that her medical records support these findings by citing to a single treatment plan in which Ms. Nedospasova noted her diagnoses and that her medications were being adjusted to reduce her symptoms. (Doc. 9 at 23), citing (Tr.

1318-19).   However, that same treatment plan contains a note to "rule out malingering" and to perform an in-house drug screen at Williams's next appointment.  *Id*. at 1319.  Records from that encounter also note Williams's chief complaint to be the following: "'I talked to my lawyer and he told me that [I] will get my disability in two months.'"  *Id*. at 1314.  Other notes from Ms. Nedospasova reflect that Williams was very focused on securing disability benefits.  *See* (Tr. 1314)("Client is talkative, she is confident that she will obtain her disability in two months because she is very sick."); (Tr. 1321)("[Williams] emphasized her desire to be on disability, ongoing health issues, and her lawyer who is helping to obtain her disability benefits.").

Williams takes issue with the ALJ's multiple references to a particular clinical note in which Ms. Nedospasova noted that Williams was "intrusive" and "manipulative."  (Doc. 9 at 23) citing (Tr. at 1321.  Specifically, Ms. Nedospasova noted that Williams forcefully hugged her, asked personal questions, and requested that she speak with Williams's attorney as "a favor towards disability."  (Tr. 1321).  Ms. Nedospasova also noted that Williams expressed "splitting by idealizing a practitioner and degrading her therapist."  *Id*.  Williams notes that "splitting" is defined in the DSM IV as "'a pattern of unstable and intense interpersonal relationships characterized by alternating between extremes of idealization and devaluation."  (Doc. 9 at 23).  According to Williams, the ALJ improperly relied on

these notes in an effort to discredit her.  However, Williams cites no law for the proposition that an ALJ commits reversible error by considering such notes in arriving at his findings.  Thus, the Court is essentially left only with Williams's contention that the ALJ should have given less weight to Ms. Nedospasova's note about her being manipulative and more weight to the checkmark/fill-in-the-blank form and the note about "splitting."  This type of reweighing would be improper as the Eleventh Circuit has frequently noted that a district court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 at 1178 (11th Cir. 2011)(quotation marks omitted).

Next, Williams argues that the ALJ erred in his consideration of Dr. Rogers's opinion.  Specifically, she complains that the ALJ improperly invalidated her IQ score by noting that "the ability to score poorly on standardized testing, such as IQ testing, is significantly more achievable than scoring well above one's natural ability."  (Tr. 1353).  However, the Commissioner correctly notes that the ALJ did not "invalidate" her IQ score.  Rather, the above statement was made in the context of the other evidence relating to her mental abilities.  For example, the ALJ noted that Williams did not receive any special education services when she was in school, she completed her GED and cosmetology school, she is able to drive a car, shop for

groceries, prepare her own meals, and live independently. (Tr. 1352-53)[4]. The ALJ also noted that Williams had applied for and held jobs in the past. Thus, the ALJ's reference to the ease with which a person could achieve a lower score on an IQ test was not an invalidation of Williams's score. Rather, it was part of a discussion as to how that score was inconsistent with the other evidence of record. And, considering Ms. Nedospasova's suggestion that Williams was manipulative and could be malingering, such a discussion was appropriate and was not an improper invalidation of her IQ score.

In addition to an IQ test, Dr. Rogers also completed a checkmark form similar to those completed by Ms. Hines-Capron and Ms. Nedospasova. The ALJ gave this form no weight because, he said, it was not supported by Dr. Rogers's examination or any other medical records. (Tr. 1361-62). Williams argues that this is reversible error because, she says, Dr. Rogers's 8-page report "extensively details his examination findings and conclusions…." (Doc. 9 at 25). Although Williams does not cite to any particular findings in Dr. Rogers's report that would support the checkmark opinions, the Court has reviewed it in its entirety. Dr. Rogers's report

_____

[4] The ALJ also noted that Williams's IQ was not consistent with her having raised children and applied for various social services. However, Williams notes that she has no children and had assistance from a social worker when filling out the relevant forms. The Court does not find these isolated factual inaccuracies to change its analysis.

noted Williams's self-reported symptoms, her personal and family history, and other biographical details.  He noted that she had no remarkable mannerisms, her attitude was cooperative, and that "blocking, muteness, repetitions, flight of ideas, etc., were not observed."  (Tr. 1299).  Similarly, Dr. Rogers noted that "loose associations, tangential, or circumstantial thinking were not observed" and that other observations were normal.  *Id*.  Dr. Rogers also noted that his attempts to administer the Neuropsychological Impairment Scale were unsuccessful because Williams "began rating all the scale items at the maximum level, even when [he] asked her to be more discriminating … which invalidated the test."  *Id*. at 1302.

In conclusion, Dr. Rogers found that Williams was able to function independently despite having a below average quality of daily activities.  The Court does not find Dr. Rogers's report to support Williams's contention that she is unable to work.  Thus, the ALJ did not err by giving little weight to the checkmark form Dr. Rogers completed because it was not supported by other evidence in the record.  Because the ALJ explained this in his opinion, Williams's contention to the contrary is refuted by the record, and she is entitled to no relief on this issue.

### 2.  Physical Limitations

Williams next asserts that the ALJ erred when he determined her physical RFC.  Specifically, she points to the ALJ's evaluation of Dr. Eston Norwood's opinion.  According to Williams, Dr. Norwood found that she "may be limited by

pain" and would be limited to standing or walking for a total of one hour in an average workday and could sit, stand, or walk for 30 minutes at a time. (Doc. 9 at 26), citing (Tr. 1283, 1285). Williams claims that the ALJ left this finding out of his RFC determination without explanation and alleges that he cherry-picked other findings to suit his own RFC determination. The Court disagrees.

The ALJ found Dr. Norwood's statement that Williams "may be limited" by her subjective complaints of pain to be vague and conclusory, just as he did with similar statements from other providers. *See*, *e.g.*, (Tr. 1376). The ALJ correctly noted that Dr. Norwood never found that Williams's pain would definitively preclude her from working. As noted above, an ALJ may discount an opinion when the opinion is conclusory, the provider fails to provide objective medical evidence to support his or her opinion, or the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60.

To the extent Williams alleged that the ALJ should have included Dr. Norwood's limitations on standing and walking in his RFC determination, the Court notes that opinion is internally inconsistent. While Dr. Norwood did check boxes indicating the above-mentioned limitations, he also noted that Williams's back pain was "subjective." (Tr. 1284). Toward the end of Dr. Norwood's opinion, he notes the following impression: "Back pain, knee pain. She may be limited by pain, but I do not find neurologic deficit or evidence of physical neurologic impairment to do

work related activities including sitting, standing, walking, lifting, carrying, [and] handling objects.  I have filled out the Medical Source Opinion (Physical) as requested."  Said another way, Dr. Norwood's actual findings do not support his check marks on the pre-printed form he was asked to complete.  Thus, the record contains substantial evidence upon which the ALJ could have based his RFC determination.  Further, Williams did not point to any other evidence in the record that would contradict that determination.

For these reasons, the Court finds that the ALJ properly evaluated the opinion evidence Williams presented in support of her application.  Accordingly, the ALJ did not commit reversible error, and Williams is not entitled to relief on her claim that the ALJ improperly evaluated the opinion evidence.

### C. Williams did not present evidence demonstrating that she met Listing 12.06.

Finally, Williams asserts that the ALJ erred by failing to find that she met or equaled a Listing under 20 C.F.R. Pt. 404, Subpt. P, App'x 1.  Specifically, Williams claims to meet Listing 12.06 for anxiety.  Listing 12.06 has three paragraphs denoted A, B, and C.  To meet or equal Listing 12.06, a claimant must satisfy the criteria from paragraphs A and B or paragraphs A and C.  To meet the paragraph A criteria, a claimant must have medical documentation of three or more listed symptoms.

Once that is established, a claimant must then show that they also satisfy either the criteria under paragraph B or paragraph C.

> Section 12.00A.2.b provides, in relevant part:
>
> > Paragraph B of each listing (except 12.05) provides the functional criteria we assess, in conjunction with a rating scale (see 12.00E and 12.00F), to evaluate how your mental disorder limits your functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to function independently, appropriately, effectively, and on a sustained basis (see §§ 404.1520a(c)(2) and 416.920a(c)(2) of this chapter). To satisfy the paragraph B criteria, your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. […].

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00A.2.b.

Williams asserts that she meets the "A" criteria with her documented sleep disturbance and fatigue, irritability, and restlessness. (Doc. 9 at 28). She asserts that she meets the "B" criteria by her documented marked limitations in maintaining concentration, persistence, and pace and in adapting and managing herself. *Id.* She does not assert that she meets the "C" criteria, thus the Court makes no findings in that regard.

According to Williams, the ALJ did not address the "A" criteria. As to the "B" criteria, Williams contends that the ALJ erred by discrediting "the opinions of

all the reviewing, examining, and treating psychologists and therapists and cherry-pick[ing] among the clinical record and their opinions." *Id*. at 29.  Here, Williams does not point to any specific errors.  Rather, she appears to reassert the same argument discussed in Part II of this opinion.  As discussed above, the ALJ did not commit reversible error by discrediting or giving less weight to certain opinions.  Therefore, Williams is essentially asking this Court to reweigh the evidence to arrive at her preferred result.  However, such reweighing would be improper as the record contains substantial evidence to support the ALJ's decision.  *Winschel*, 631 F.3d at 1178.  Because Williams does not meet either the paragraph B or paragraph C criteria, it is immaterial whether she meets the paragraph A criteria.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ properly considered all the evidence, and his decision is supported by substantial evidence.  Accordingly, the Commissioner's final decision is **AFFIRMED**.  A separate, final judgment will be entered.

**DONE** and **ORDERED** September 6, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE